```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
 PATRICIA WICKES,

                          Plaintiff,
 v.                                                              MEMORANDUM OPINION
                                                                 AND ORDER
 WESTFAIR ELECTRIC CO., et al.,
                                                                 19-CV-10673 (PMH)
                          Defendants.
-----------------------------------------------------------X
```

PHILIP M. HALPERN, United States District Judge:

Plaintiff Patricia Wickes ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings claims of: (1) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) race discrimination under 42 U.S.C. § 1981 ("Section 1981"); (3) race discrimination under the New York State Human Rights Law ("NYSHRL"); (4) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"); (5) age discrimination under the NYSHRL; (6) sex discrimination under Title VII; (7) sex discrimination under the NYSHRL; (8) retaliation; and (9) violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").

By motion dated June 15, 2020, defendants West-Fair Electric Contractors (sued herein as "Westfair Electric Co.") ("West-Fair"), Basil Holubis (sued herein as "Basil Holibus") ("Holubis"), Jeffrey D'Aleo (sued herein as "Jeffrey Deleo") ("D'Aleo"), Thomas Gresis (sued herein as "Tom Griesis") ("Gresis"), and George Guerra (sued herein as "George Guererra") ("Guerra") (collectively "Defendants"),[1] moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims of: (1) race discrimination under Title VII, Section 1981, and the NYSHRL; (2) age discrimination under the ADEA and the NYSHRL; and (3) ERISA

---

[1] Plaintiff stated that she is willing to amend the caption to "substitute the correct spelling of each Defendant's name" (Doc. 25 at 1; Doc. 26 at 1); she has not, however, made any such request to the Court.

violations. (Doc. 29; Doc. 29-7, "Defs. Br."). Defendants also seek dismissal of so much of Plaintiff's claims that concern conduct that allegedly occurred during an apprenticeship with West-Fair in late 2014 and early 2015 upon the grounds that, *inter alia*, such claims are untimely. (Defs. Br. at 14-16). Defendants further seek dismissal of Plaintiff's claims under Title VII and the ADEA to the extent they are asserted against defendants Holubis, D'Aleo, Gresis, and Guerra (the "Individual Defendants") upon the grounds that these statutes preclude individual liability as a matter of law. (*Id*. at 9).

For the reasons set forth below, the Court GRANTS Defendants' partial motion to dismiss.

## BACKGROUND

Plaintiff commenced this action on November 18, 2019. (Doc. 2, "Compl."). Plaintiff describes herself as a Native American woman born in 1960. (*Id*. at 3-4).[2] She asserts that after she was hired as a fifth-year apprentice mechanic by West-Fair on or about June 18, 2018, she became the sole woman at the worksite and was subjected to pervasive harassment, retaliation, and a hostile work environment because of her race, sex, and age. (*Id*. at 3-5, 14, 19, 30). Plaintiff relates several incidents with coworkers and supervisors that she claims constitute discrimination, sexual harassment, and retaliation. These incidents include the following acts taken by her coworkers and supervisors: calling her derogatory names (*see, e.g., id*. at 14, 17, 22-23); singling her out and treating her differently than her male coworkers (*see, e.g., id*. at 25, 27, 32, 35); sabotaging her work product (*see, e.g., id*. at 26-27, 31-33); targeting her partner for his association with her (*see, e.g., id*. at 20, 23, 25, 27); reassigning her partner and forcing her to work alone while male coworkers remained partnered (*see, e.g., id*. at 23, 34-35); trivializing her complaints (*see, e.g., id*. at 14-15, 36, 38); giving her assignments below her ability and paygrade (*see, e.g.,*

---

[2] Page numbers refer to those generated by the Court's electronic filing system.

*id*. at 22-23, 29-30, 33-34); having her take instructions from apprentices with less experience and seniority (*see, e.g., id*. at 30-31); and eventually terminating her employment (*see, e.g., id*. at 5, 15, 36-38).

Plaintiff also claims that her medical insurance was intentionally canceled although she was a member in good standing of her union, Local 3, resulting in the cancellation of her son's surgery. (*Id*. at 37). Plaintiff alleges that in February 2019 she filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") (*id*. at 7), and attaches to the Complaint a Notice of Right to Sue from the EEOC dated August 26, 2019 (*id*. at 9-13).

By Order dated December 11, 2019, Chief Judge McMahon granted Plaintiff's application to proceed *in forma pauperis*. (Doc. 4). On December 17, 2019, Judge Román issued an Order of Service, which directed the U.S. Marshals Service to effectuate service upon Defendants. (Doc. 5). On April 6, 2020, this action was reassigned to me. On April 28, 2020, following the letter exchange required by my Individual Practices, Defendants filed a pre-motion letter in connection with their anticipated motion to dismiss. (Doc. 23). Plaintiff filed two documents in opposition, an "Answer" and a "Response." (Docs. 25, 26). A review of these documents reveals that the substance is identical.

On May 5, 2020, the Court granted Defendants leave to file a motion to dismiss and set a briefing schedule. (Doc. 28). The motion was made on June 15, 2020; Plaintiff's opposition was

filed on July 13, 2020 (Doc. 30, "Pl. Br.");[3] and the motion was fully submitted with the filing of Defendants' Reply on July 27, 2020 (Doc. 32).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[3] In connection with her opposition to the motion to dismiss, Plaintiff also filed a document of compiled "exhibits" (Doc. 31), albeit unsupported by affidavit as required by Local Civil Rule 7.1. The Court has discretion to overlook a failure to comply with Local Civil Rule 7.1 and exercises such discretion on this motion. *See*, *e.g.*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016). As relevant to the instant motion, Plaintiff's "Exhibit A" (Doc. 31 at 1-45) appears to be a contract between Westchester/Fairfield Division New York Electrical Contractors Association, Inc. and Local Union No. 3 (White Plains), International Brotherhood of Electrical Workers, AFL-CIO, with handwritten notes throughout (the "CBA"). Plaintiff's "Exhibit B" (*id*. at 46-84) is described in various ways by Plaintiff, including her "original" civil complaint (Pl. Br. at 7, 28); her "Complaint" or "Federal Complaint" (*id*. at 25, 28); and the claim filed November 18, 2019 in the United States District Court for the Southern District of New York (*id*. at 23). Even a cursory review of "Exhibit B" reveals that it is not the Complaint filed in this action. The Court rejects any attempt by Plaintiff to mislead the Court by relying upon this document. Plaintiff is cautioned that any further misrepresentations, untrue statements, and/or improper conduct will lead to sanctions, which may include dismissal of her action. *See* Fed. R. Civ. P. 11; *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 226 (N.D.N.Y. 2008) ("Not even inexperience as a *pro se* litigant excuses such a misrepresentation to the Court."). To the extent Plaintiff's opposition refers to "Exhibit B" as her complaint, the Court will only consider the allegations contained in the Complaint properly filed in this action.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Cappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [ ] 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court is "obligated to draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [the plaintiff] has not pled." *Chavis*, 618 F.3d at 170. The Court also has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I. Race and Age Discrimination

Defendants move to dismiss Plaintiff's claims of race discrimination under Title VII, Section 1981, and the NYSHRL, as well as her claims of age discrimination under the ADEA and NYSHRL.

 a. Title VII Race Discrimination and ADEA Age Discrimination

Defendants contend that Plaintiff failed to exhaust her administrative remedies and thus her Title VII race discrimination and ADEA age discrimination claims must be dismissed. (Defs. Br. at 10-13). Defendants offer a copy of Plaintiff's EEOC Notice of Charge of Discrimination (Doc. 29-1 ¶ 7; Doc. 29-6, "EEOC Charge") in support of this argument.[4]

Before an aggrieved party can assert a Title VII claim in federal court, he or she must file a charge of discrimination with the EEOC "within one hundred and eighty days after the alleged

---

[4] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). "In situations where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein." *Chidume v. Greenburgh-N. Castle Union Free Sch. Dist.*, No. 18-CV-01790, 2020 WL 2131771, at *2 (S.D.N.Y. May 4, 2020). Accordingly, the EEOC Charge may properly be considered by the Court on this motion, as this is a situation where exhaustion of administrative remedies is a prerequisite to bringing suit, and these documents are integral to Plaintiff's Complaint.

unlawful employment practice occurred," or if proceedings were initially instituted with a State or local agency, "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Plaintiff must then file an action in federal court within ninety days of receiving a right-to-sue letter from the agency. *Id.* § 2000e-5(f)(1); *Duplan v. City of New York*, 888 F.3d 612, 621-22 (2d Cir. 2018). The ADEA provides the same relevant time limitations and requirements. 29 U.S.C. § 626(d).

Under either statutory scheme, a plaintiff must first pursue available administrative remedies and timely file a charge with the EEOC. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing [an employment discrimination claim] in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."); *Spruill v. N.Y.C. Health & Hosp.*, No. 06-CV-11362, 2007 WL 2456960, at *2 (S.D.N.Y. Aug. 23, 2007) ("A plaintiff must exhaust his administrative remedies with the EEOC or an authorized agency before filing . . . ADEA claims in federal court."), *aff'd*, 367 F. App'x 269 (2d Cir. 2010).

Exhaustion of administrative remedies "is ordinarily 'an essential element' of a Title VII claim," although "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)); *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998); *see also Amin v. Akzo Nobel Chem., Inc.*, 282 F. App'x 958, 960-61 (2d Cir. 2008).

As the Second Circuit has recognized, "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks omitted). The "central question" is whether the EEOC charge gave that "agency adequate notice to investigate discrimination on" the bases alleged. *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008); *Williams*, 458 F.3d at 70; *Deravin*, 335 F.3d at 202. "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that an investigation would not likely encompass the new allegations." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (citing *Mathirampuzha*, 548 F.3d at 74-78). "In this inquiry, 'the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Williams*, 458 F.3d at 70 (citing *Deravin*, 335 F.3d at 201).

As discussed in *Wilson v. New York City Police Dep't*:

> [I]t is well-settled that merely checking a box, or failing to check a box[,] does not necessarily control the scope of the charge. The more critical analysis is whether there is any explanation or description supporting a particular claim. Just as a plaintiff would not be precluded from bringing a retaliation claim simply because he checked the wrong box on his administrative charge (provided that he alleged facts supporting such a claim), the fact that [plaintiff] checked the box for retaliation does not mean that he can now bring such a claim in this action even though he alleged no facts in his administrative charge related to retaliation.

No. 09-CV-2632, 2011 WL 1215031, at *9 (S.D.N.Y. Feb. 4, 2011), *adopted by*, 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011). Plaintiff checked only the "sex" and "retaliation" boxes in her EEOC Charge for the basis of the discrimination complained of. (EEOC Charge at 3). She stated in the section providing the particulars of her complaint: "I am female and because of that I have been subjected to retaliation and discriminated against." (*Id.*). The balance of the allegations set

8

forth in the EEOC Charge concern the differences in treatment she perceived between herself and her male co-workers. (*Id*. at 3-4). Plaintiff does not make any allegation concerning her age or her race in the EEOC Charge. (*Id.*). As regards the ADEA, the statute is not invoked in any of the allegations of Plaintiff's EEOC Charge; in fact, the last sentence specifically states: "Based on the above, I believe my rights have been violated under Title VII of the Civil Rights Act of 1964, as amended." (*Id*. at 4). The investigation stemming from her EEOC Charge could not encompass Plaintiff's allegations concerning any ADEA violation. To be sure, the EEOC's Notice of Charge of Discrimination sent to West-Fair indicates only a charge based upon a violation of Title VII; the ADEA box was not checked off as applicable by the agency. (*Id*. at 2).

Although Plaintiff maintains that she did in fact check the boxes, her position appears to be premised upon her belief that her Complaint filed in this action is her EEOC Charge. (Pl. Br. at 30). That is not the case, and no stretch of the imagination can create allegations in her EEOC Charge concerning race and age sufficient to cure the failure to exhaust her administrative remedies. In this case, there can be no dispute that Plaintiff both failed to "check the box" and failed to make any allegation in her EEOC Charge concerning discrimination against her on the basis of her race or age. Simply put, these claims were not raised in the administrative proceeding, nor are they reasonably related to claims that were raised in the administrative proceeding, and are thus barred in this action. *See Chidume*, 2020 WL 2131771, at *2-3.

Accordingly, Plaintiff's claims of race discrimination under Title VII and age discrimination under the ADEA are dismissed.[5]

### b. NYSHRL Race and Age Discrimination

The prerequisite exhaustion of administrative remedies applicable to Title VII and ADEA claims is not applicable to NYSHRL claims. *Ross-Caleb v. City of Rochester*, 512 F. App'x 17 (2d Cir. 2013); *Wurtzburger v. Koret*, No. 16-CV-7897, 2018 WL 2209507, at *5 (S.D.N.Y. May 14, 2018). "However, to allow Plaintiff to proceed on those identical state claims after the Court has dismissed the corresponding Title VII [and ADEA] claims due to Plaintiff's failure to exhaust 'would essentially allow [Plaintiff] to get the claims into this Court through the courthouse's back door.'" *Chidume*, 2020 WL 2131771, at *12 (citing *Wurtzburger*, 2018 WL 2209507, at *6). Thus, Plaintiff's NYSHRL claims of race and age discrimination are also dismissed.

### c. Liability of the Individual Defendants

Defendants also challenge Plaintiff's claims of sex discrimination and retaliation under Title VII as alleged against the Individual Defendants upon the grounds that individual liability is precluded thereunder as a matter of law. (Defs. Br. at 9).

Individuals are not subject to liability under Title VII. *See, e.g., Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (affirming dismissal because "individuals are not subject

---

[5] Plaintiff did not specify in her pleading under what statute(s) the retaliation alleged is claimed. While Defendants do not appear to explicitly seek dismissal of any purported retaliation claims under the ADEA on exhaustion grounds, they repeatedly observe that she failed to assert any ADEA claims in her EEOC Charge. "[T]he question for the Court is whether it is reasonable to expect that the retaliatory conduct complained of would have fallen within the scope of an investigation prompted by the EEOC charge of [ ] discrimination." *Hansen v. Danish Tourist Bd.*, 147 F. Supp. 2d 142, 154 (E.D.N.Y. 2001). The Court finds it impossible to envision how the EEOC would know to investigate an ADEA retaliation claim when the EEOC Charge does not describe conduct prohibited by the ADEA and does not explain how Plaintiff opposed any such discriminatory conduct. "The 'reasonable relatedness' test is not satisfied by the improbable possibility that the EEOC could have stumbled into a new universe of allegations that the plaintiff alleges for the first time in [her] complaint." *Chinn v. City Univ. of New York School of Law at Queens College*, 963 F. Supp. 218, 223 (E.D.N.Y. 1997). Accordingly, to the extent Plaintiff asserts an ADEA retaliation claim, it is likewise barred for failure to exhaust administrative remedies.

to liability under Title VII") (citations omitted); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) ("an employer's agent may not be held individually liable under Title VII"), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Harrison v. Lesort*, No. 09-CV-10188, 2011 WL 744670, at *2 (S.D.N.Y. Mar. 1, 2011) (dismissing plaintiff's Title VII and ADEA claims because "individuals are not subject to liability under either Title VII or the ADEA"). However, an individual "who actually participates in the conduct giving rise to the discrimination claim may be held personally liable" under the NYSHRL. *Tomka*, 66 F.3d at 1317; *Feingold v. New York*, 366 F.3d 138, 158 n.19 (2d Cir. 2004). Accordingly, all of Plaintiff's remaining claims against the Individual Defendants under Title VII are dismissed. The sex and retaliation claims alleged against the Individual Defendants under the NYSHRL remain intact and will proceed to discovery.

        d.   <u>Timeliness of Plaintiff's Sex Discrimination and Retaliation Claims</u>

Defendants also seek dismissal of so much of Plaintiff's claims alleging discrimination under Title VII and the NYSHRL that concern conduct that allegedly occurred outside of the relevant limitations periods. As discussed *supra*, Title VII claims must be brought within 180 or 300 days after the alleged unlawful conduct occurred. *See* 42 U.S.C. § 2000e-5(e)(1). As regards the NYSHRL, claims are barred unless brought within three years of the alleged discriminatory act. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing N.Y. Exec. Law § 296; N.Y. C.P.L.R. § 215(2)). Plaintiff filed her EEOC Charge on February 10, 2019 (Compl. at 7; EEOC Charge at 3, 4). She filed her Complaint in this action on November 18, 2019. (*See* Compl.). According to Defendants, Plaintiff's claims under Title VII based upon conduct occurring prior to April 16, 2018 are barred; and her claims under the NYSHRL based upon conduct occurring prior to November 18, 2016 are barred. (Defs. Br. at 15-16). Moreover,

Defendants argue that Plaintiff failed to exhaust her administrative remedies as regards such conduct which they contend occurred during her "apprenticeship" with West-Fair as such conduct was not incorporated in her EEOC Charge or reasonably related to that which she did allege therein. (*Id*. at 14-15).

The Complaint lacks clarity as regards the dates of some of the incidents alleged to have occurred. Defendants proffer forms reflecting Plaintiff's initial assignment to West-Fair effective March 28, 2014 and layoff due to reduction in force on September 4, 2015, as well as time sheets reflecting Plaintiff's work for West-Fair on the Pepsico worksite. (Doc. 29-2; Doc. 29-3). Based upon these forms, Defendants contend that conduct alleged by Plaintiff to have occurred during that stretch of time is time-barred. (Defs. Br. at 14-16). Plaintiff appears to concede that her claims based on instances allegedly occurring during her "employment as an apprentice" with West-Fair are "untimely." (Pl. Br. at 10, 31-32). She requests, however, that they be considered as part of a pattern of prohibited conduct by Defendants. (*Id*.). Although "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges . . . the statute [does not] bar an employee from using the prior acts as background evidence to support a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002).

Plaintiff's claims concerning conduct that allegedly occurred in violation of Title VII prior to April 16, 2018 are thus not actionable; and claims concerning conduct that allegedly occurred in violation of the NYSHRL prior to April 16, 2018 are likewise not actionable. However, construing the Complaint with the required liberality, and giving every benefit to Plaintiff, the Court will permit all of Plaintiff's allegations concerning sex discrimination and retaliation under Title VII and the NYSHRL to proceed to discovery, as limited by the rulings set forth herein,

without prejudice to Defendants' renewal of these limitations and exhaustion arguments in future motion practice or at trial.

  e. <u>Section 1981 Race Discrimination</u>

To establish a claim under Section 1981, a plaintiff must allege facts to support the following elements: (1) that she is a member of a racial minority; (2) the defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999). Under Section 1981, only intentional racial discrimination is prohibited. *Id.*; *see also Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ("Essential to an allegation under Section 1981 are allegations that the defendant's acts were purposefully discriminatory and racially motivated."). The statutes' "enumerated activities" include rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all the laws and proceedings for the security of persons and property." *Brown*, 221 F.3d at 339 (quoting 42 U.S.C. § 1981). To survive a motion to dismiss, a plaintiff asserting a Section 1981 claim must allege specifically the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent. *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 272-73 (S.D.N.Y. 2007); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). Mere naked assertions devoid of facts upon which a court could find racial discrimination fail to state a claim under Rule 12(b)(6). *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

Plaintiff offers a single conclusory allegation in her Complaint that she experienced intentional employment discrimination on the basis of her race as "Native American" by checking that box on the form Complaint. (Compl. at 4). The only other allegation in her pleading arguably concerning her race is her recollection of a conversation either on December 14, 2018 or in January

13

2019 with Eliot Hecht, who is not a defendant in this action, and who appears to be affiliated with Plaintiff's union, Local 3. (*Id.* at 15). During that conversation, Plaintiff alleges that she relayed to him her observation that on all of her jobs, "the first people laid off are always minority men and myself . . . its [sic] just me and the 'brown people,'" to which Mr. Hecht allegedly stated "that is an unfortunate reality of this business." (*Id.*). Plaintiff fails to allege any facts that Defendants treated her disparately than similarly situated employees that were not Native American and fails to allege discrimination based on an enumerated activity.

Accordingly, the Court finds that the Plaintiff has failed to plead a plausible claim under Section 1981 and thus, that claim must be dismissed.[6]

## II.     ERISA

Plaintiff sues Defendants under "ARISA Law" (Compl. at 4), and alleges that after she was laid off, on December 4, 2018, a surgery for her son was cancelled by the surgeon's office because she no longer had medical insurance (*id.* at 37). Construing the Complaint with the required liberality, and giving every benefit to Plaintiff, the Court assumes Plaintiff intended to refer to ERISA, and interprets this reference to encompass both a denial of benefits claim under § 502(a)(1)(B) and a retaliation claim under § 510.

---

[6] To the extent Plaintiff's retaliation claim is also brought under Section 1981, it similarly must be dismissed. Although Section 1981 does not contain an explicit anti-retaliation provision, such claims are evaluated using substantially the same framework as Title VII and ADEA claims. *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017). Thus, "a plaintiff must show that 1) the employee engaged in [a] protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action." *Id.*; *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). Plaintiff fails to state a *prima facie* case as to the first element. There is no suggestion in the Complaint that the matters to which Plaintiff complained after her termination related in any way to her race. Her alleged conversation with her union representative Mr. Hecht, even construed liberally, fails to support any inference that Plaintiff was engaged in protected activity under Section 1981. "Though the range of protected activities is broad, it does not stretch this far." *Williams v. New York City Dep't of Educ.*, No. 17-CV-1996, 2018 WL 4735713, at *10-11 (S.D.N.Y. Sept. 29, 2018).

As regards the alleged denial of benefits under § 502(a)(1)(B), only the plan, its administrators, and its trustees may be held liable, and an employer who has designated a separate plan administrator cannot be liable, even if it continues to function as a "*de facto* co-administrator." *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998). Defendants argue that neither West-Fair nor the Individual Defendants are the plan or the plan's administrator under the terms of the governing CBA. Both Defendants and Plaintiff have attached a copy of the CBA in connection with this motion for the Court's consideration. (Doc. 29-1 ¶ 6; Doc. 29-5; Doc. 31 at 1-45).

The Court considers the CBA, even though Plaintiff did not attach this document to her Complaint and it is not explicitly incorporated by reference therein. This is because "the collective bargaining agreement [ ] governed Plaintiff's employment relationship with Defendants" and "Plaintiff relied on these documents in bringing suit, and there is no dispute about their relevance or veracity, or that Plaintiff knew about and possessed them when [s]he brought this suit." *Washington v. Garage Mgmt. Corp.*, No. 11-CV-3420, 2012 WL 4336163, at *2 (S.D.N.Y. Sept. 20, 2012); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 139 (E.D.N.Y. 2014); *see also Severin v. Project OHR, Inc.*, No. 10-CV-9696, 2011 WL 3902994, at *1 n.1 (S.D.N.Y. Sept. 2, 2011) (finding that a CBA may be considered on 12(b)(6) motion to dismiss despite failure to reference in or annex to complaint where relied upon or integral to complaint and "Plaintiffs do not contest either the existence or the applicability of the CBA.").

So long as the "plaintiff has actual notice" of the document or "has relied upon [it] in framing the complaint" the document may be considered. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *see also Manley*, 2011 WL 2947008, at *1 n.1. However, before materials outside the complaint may become the basis for dismissal (1) it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and (2) it must

15

be clear that there exists no material disputed issue of fact regarding the relevance of the document. *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 393 (E.D.N.Y. 2019) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010)).

Plaintiff alleges in her Complaint that she was a member of the union, Local 3, and upon discovering that her medical insurance had terminated, she contacted her union representative, Thomas Capurso (Compl. at 14, 37), and the "business agent" at the union's headquarters in Queens, Mr. Hecht (*id*. at 15, 37). Thus, Plaintiff undoubtedly knew then, and at the time of filing the Complaint thereafter, that the CBA governed her employment relationship with West-Fair. Moreover, Plaintiff does not dispute the existence, authenticity, or accuracy of the CBA, nor is there any dispute concerning its relevance. Rather, Plaintiff annexes to her opposition a copy of the CBA in full to support her argument that West-Fair is a "co-administrator" of Plaintiff's medical benefits and is thus liable for the three-hour interruption (*id*. at 37) in her medical benefits. (Pl. Br. at 32-34). Accordingly, the Court considers the CBA in connection with this motion.

The CBA provides, in relevant part, that "[t]he Joint Industry Board shall administer the Pension, Hospitalization and Benefit Plan of the Electrical Industry. All employers shall remit weekly, through the term of the Agreement, the following percentages of their standard gross wages to the Pension, Hospitalization and Benefit Plan." CBA at Art. XVII; *see also id*. at Art. XIII (describing the creation and purpose of the Joint Industry Board). Indeed, Plaintiff concedes that her medical benefits were "[a]dministered by the Joint Board of Local 3 – IBEW." (Pl. Br. at 22; *see also id*. at 11, 33). However, Plaintiff argues that West-Fair is either represented by the Joint Industry Board, or functions as a co-administrator. (*Id*. at 11, 33). Even if West-Fair is "represented" by the Joint Industry Board, or if it is a "*de facto* co-administrator" of Plaintiff's

16

medical insurance, West-Fair cannot be held liable under § 502(a)(1)(B) where it has indisputably designated a plan administrator. *Crocco*, 137 F.3d at 107.

As regards a retaliation claim, ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of an employee benefit plan] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140, ERISA § 510. An "essential" element of a § 510 claim is "to show that an employer was at least in part motivated by the specific intent to engage in activity prohibited by § 510." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988).

Here, the Complaint fails to set forth plausibly any allegations that would give rise to an ERISA § 510 claim against Defendants. As an initial matter, Plaintiff alleges that when she discovered her medical benefits were terminated, she contacted representatives of her union. (Compl. at 37). Plaintiff further alleges in the Complaint that a union representative told her that she was "somehow removed from [their] medical insurance but he had someone in Queens [union Local 3 headquarters] get [her] back on" within three hours of her call (*Id.* at 37). Moreover, as discussed above, the CBA is clear that the Joint Industry Board administers the health plan. Thus, the Complaint fails to allege any set of facts on which to conclude that Defendants had any power to effectuate an impact on Plaintiff's benefits, nor that Plaintiff believed they did.

Plaintiff argues that West-Fair is liable because by terminating her employment, it "set in motion a sequence of events that resulted" in the loss of her medical benefits, and that an officer of West-Fair who allegedly sits on the Joint Industry Board "*had to know*," by virtue of his position, that Defendants were acting in a retaliatory manner. (Pl. Br. at 33 (emphasis in original)). Plaintiff alleged in her Complaint, however, that the union representative told her that even her

layoff would not have caused her medical insurance to be cancelled, and that "the computer randomly kicked [her] off the insurance." (Compl. at 37 (emphasis omitted)). There is no indication that any Defendant took any action that led to the cancellation of her benefits with that specific intent. The Court simply cannot conclude, based upon the conclusory allegations in her Complaint and unsupported theories argued in her opposition, that any action was taken by Defendants with the intent of preventing Plaintiff from attaining health benefits. Accordingly, Plaintiff's ERISA violation claims must be dismissed.[7]

## CONCLUSION

Defendants' partial motion to dismiss pursuant to Rule 12(b)(6) is GRANTED. The Court dismisses Plaintiff's claims of: (1) race discrimination under Title VII, the NYSHRL, and Section 1981; (2) age discrimination under the ADEA and the NYSHRL; (3) retaliation to the extent alleged under the ADEA and Section 1981; (4) violations of ERISA; and (5) Plaintiff's remaining claims of sex discrimination and retaliation under Title VII to the extent asserted against the Individual Defendants. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court dismisses the foregoing claims alleged in Plaintiff's Complaint with prejudice as any amendment would be futile.

---

[7] The Court also notes that Plaintiff failed to oppose Defendants' arguments concerning the Individual Defendants' involvement in any alleged ERISA violation. Her opposition speaks to her belief that West-Fair alone denied her benefits and retaliated against her. (*See* Compl. at 32-34). Accordingly, Plaintiff's ERISA claims are dismissed against the Individual Defendants on this alternative basis as well. *See, e.g.*, *Wilkov v. Ameriprise Fin. Servs.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018) ("Construing her *pro se* submission liberally . . . [w]e affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by [plaintiff] when she failed to oppose them in her opposition to [defendant's] motion to dismiss"); *Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) ("It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims").

Plaintiff's claims against West-Fair alleging sex discrimination and retaliation under Title VII, and her claims against all Defendants alleging sex discrimination and retaliation under the NYSHRL, shall proceed to discovery. Defendants are directed to file an answer to the Complaint by February 12, 2021. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 29).

**SO ORDERED:**

Dated: New York, New York
January 20, 2021

_____
Philip M. Halpern
United States District Judge